UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| TODD J. FENDLER, | ) | CASE NO. 17-81328 |
| | ) | |
| Debtor(s) | ) | JUDGE: THOMAS M. LYNCH |

## MOTION TO AUTHORIZE TRUSTEE TO SELL PROPERTY

NOW COMES ALEX D. MOGLIA, Trustee, by and through his attorneys,

WILLIAMSMCCARTHYLLP and THOMAS P. SANDQUIST, and moves this Court for

approval of the sale of 1706 South 6th Street, Rockford, Illinois 61104 ("Premises") and in

furtherance thereof states as follows:

1.      **Description of Assets:** A single family home on property commonly known as s

1706 South 6th Street, Rockford, Illinois 61104 and legally described on the title work attached

hereto as **Exhibit A.**

2.      **Terms of Conditions of Sale:** $32,000.00 sales price.  See Contract attached as

**Exhibit B.**  The Estate is fifty percent (50%) owner in the property and will receive fifty percent

(50%) of the net proceeds of sale.

3.      **Factors Used to Establish Value:**  The property was listed and actively

marketed, and the Trustee believes that this sale represents a fair value for the Premises.

4.      **Procedure and Time Period for Filing Objections:**  This matter will be heard

on September 26, 2018 at 9:00 a.m.  Objections must be filed on or before September 23, 2018.

Objections must be in writing, must be served on the U.S. Trustee, the Chapter 7 Trustee, all

creditors and parties in interest three days prior to the hearing.

5.      **Amount of Liens and Identity of Lien Holders:**  Please see the title work

attached as **Exhibit A.**

1

6.      **Identity of Purchaser and Relationship, if any, to any Creditor or Party in**

**Interest:** Jason Williams and Shanda Goodman.  No known relationship to any Creditor or

Party in Interest.

WHEREFORE, Trustee prays that the Court authorize Trustee to sell the Premises

free and clear of interests with the liens attaching to the proceeds, and for such other and further

relief as this Court deems just.



ALEX D. MOGLIA, Trustee

By: WILLIAMSMcCARTHYLLP

By: _____
THOMAS P. SANDQUIST

Prepared by:
Thomas P. Sandquist
ARDC #06198232
WILLIAMSMcCARTHYLLP
120 West State Street, P.O. Box 219
Rockford, IL 61105
(815) 987 8900
tsandquist@wilmac.com

American Land Title Association

Commitment for Title Insurance
Adopted 6-17-06 Revised 08-01-2016
Technical Corrections 04-02-2018

Alliance Title LLC of Rockford
agent for
First American Title Insurance Co.

*Transaction Identification Data for reference only:*
Issuing Agent:          Alliance Title LLC of Rockford
Issuing Office:          124 North Water Street, Suite 202, Rockford, IL 61107
Issuing Office's ALTA® Registry ID:
Loan ID Number:
Commitment Number: WW259736AT
Issuing Office File Number:    WW259736AT
Property Address:      1706 South  6th Street, Rockford, IL 61104

Revision Number:
Hud No.

### SCHEDULE A

1.    Commitment Date:  June 21, 2018 at 07:59 AM

2.    Policy to be issued:
      (a)    **Owner's Policy: ALTA - 2006 (6/17/06)**
             Proposed Insured:    Jason Williams and Shanda Goodman
             Proposed Policy Amount:   $ 32,000.00

3.    The estate or interest in the Land described or referred to in this Commitment is Fee Simple.

4.    The Title is, at the Commitment Date, vested in:
      Todd Fendler and Marla Fendler, as tenants by the entirety

5.    The Land is described as follows:

      SEE EXHIBIT A  ATTACHED HERETO

      Alliance Title LLC of Rockford

By:    ~~Kasey Bruner~~
                    Authorized Signatory

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by First American Title Insurance Co.. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

Copyright 2006-2016 American Land Title Association. All rights reserved.
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.

AMERICAN
LAND TITLE
ASSOCIATION

Commitment No. WW259736AT



**American Land Title Association**

Commitment for Title Insurance
Adopted 6-17-06 Revised 08-01-2016
Technical Corrections 04-02-2018

Alliance Title LLC of Rockford
agent for
First American Title Insurance Co.
SCHEDULE B, PART I
Requirements

All of the following Requirements must be met:

1. The Proposed Insured must notify the Company in writing of the name of any party not referred to in this Commitment who will obtain an interest in the Land or who will make a loan on the Land. The Company may then make additional Requirements or Exceptions.

2. Pay the agreed amount for the estate or interest to be insured.

3. Pay the premiums, fees, and charges for the Policy to the Company.

4. Documents satisfactory to the Company that convey the Title or create the Mortgage to be insured, or both, must be properly authorized, executed, delivered, and recorded in the Public Records.

   a. Warranty Deed from Todd Fendler and Marla Fendler conveying fee simple title to Jason Williams and Shanda Goodman.

   b. Payment and Release of City of Rockford Special Assessment Lien for clean-up costs recorded May 25, 2006 as Document No. 0631055 for $185.75 plus costs.

   c. Payment and Release of City of Rockford Special Assessment Lien for mowing charges recorded August 14, 2006 as Document No. 0648628 for $161.75 plus costs.

   d. Payment and Release of Clean-up Lien from City of Rockford dated December 23, 2013 and recorded February 12, 2014 as Document No. 20141005272 to secure $637.75.

   e. Payment and Satisfaction of Circuit Court Case No. 2016 MR 89, Memorandum of Judgment filed 04/22/2016 in favor of The County of Winnebago and against Jason L. Williams recorded 04/25/2016 as Document No. 20161011176 in the amount of $168.50; OR PRESENTATION OF PROOF that Jason Williams is not one in the same person as Jason L. Williams appearing above.

   f. Payment and Satisfaction of Circuit Court Case No. 17 L 68, Memorandum of Judgment filed 01/12/2017 in favor of QBE Holdings. Inc. and against Northern Illinois Underwriting Managers, Inc. et al and Todd Fendler recorded 03/08/2017 as Document No. 201710006903 in the amount of $199,702.11; OR PRESENTATION OF PROOF that Todd Fendler is not one in the same person as Todd Fendler appearing above.

   g. Payment and release of State of Illinois Tax Lien filed against Jason Williams, filed on 02/09/2018, in the amount of $3,855.37, as State Identification No. 1082098; OR PRESENTATION OF PROOF that Jason Williams is not one in the same person as Jason Williams appearing above.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by First American Title Insurance Co.. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

Copyright 2006-2016 American Land Title Association. All rights reserved.
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



Commitment No. WW259736AT

**American Land Title Association**

Commitment for Title Insurance
Adopted 6-17-06 Revised 08-01-2016
Technical Corrections 04-02-2018

## SCHEDULE B
(Continued)

h.   Payment and release of State of Illinois Tax Lien filed against Jason Williams, filed on 06/15/2018, in the amount of $127.16, as State Identification No. 4331180; OR PRESENTATION OF PROOF that Jason Williams is not one in the same person as Jason Williams appearing above.

i.   Payment and release of State of Illinois Tax Lien filed against Jason Williams, filed on 02/09/2018, in the amount of $1,621.42, as State Identification No. 10571149; OR PRESENTATION OF PROOF that Jason Williams is not one in the same person as Jason Williams appearing above.

j.   Payment and release of State of Illinois Tax Lien filed against Jason Williams and Jennifer Williams, filed on 02/09/2018, in the amount of $1,795.65, as State Identification No. 9290113; OR PRESENTATION OF PROOF that Jason Williams is not one in the same person as Jason Williams appearing above.

k.   Payment and release of State of Illinois Tax Lien filed against Jason Williams and Susan Kloss, filed on 06/01/2018, in the amount of $4,070.82, as State Identification No. 1901349; OR PRESENTATION OF PROOF that Jason Williams is not one in the same person as Jason Williams appearing above.

l.   Presentation of paid receipts of the 2017 real estate taxes; second installment.


**Notes for Information**

1.   The coverage afforded by this Commitment and any policy issued pursuant hereto shall not commence prior to the date on which all charges properly billed by the Company have been fully paid.

2.   Extended coverage will be provided at no additional charge on all residential owners' policies if the Company is furnished a properly executed ALTA statement and current ALTA/ACSM or Illinois Land Title Survey certified to the Company. Matters disclosed by the above documentation will be shown specifically.
   If the property to be insured is unimproved, or is improved with a structure other than one containing no more than four residential units, extended coverage over the six general exceptions must be requested and an additional charge will be made for such coverage. The Company should be furnished a properly executed ALTA statement and a current ALTA/ACSM or Illinois Land Title Survey certified to the Company. Matters disclosed by the above documentation will be shown specifically.

3.   Mortgage policies insuring a first lien position on one to four family properties will contain our Environmental Protection Lien, ALTA endorsement - Form 8.1.

4.   Notice: Please be aware that due to the conflict between federal and state laws concerning the cultivation, distribution, manufacture or sale of marijuana, the Company is not able to close or insure any

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by First American Title Insurance Co.. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

Copyright 2006-2016 American Land Title Association. All rights reserved.
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.

AMERICAN
LAND TITLE
ASSOCIATION

Commitment No. WW259736AT

**American Land Title Association**

Commitment for Title Insurance
Adopted 6-17-06 Revised 08-01-2016
Technical Corrections 04-02-2018

## SCHEDULE B
### (Continued)

transaction involving Land that is associated with these activities.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by First American Title Insurance Co.. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

Copyright 2006-2016 American Land Title Association. All rights reserved.
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



AMERICAN
LAND TITLE
ASSOCIATION

Commitment No. WW259736AT

**American Land Title Association**

Commitment for Title Insurance
Adopted 6-17-06 Revised 08-01-2016
Technical Corrections 04-02-2018

## SCHEDULE B
(Continued)

### SCHEDULE B, PART II
Exceptions

THIS COMMITMENT DOES NOT REPUBLISH ANY COVENANT, CONDITION, RESTRICTION, OR LIMITATION CONTAINED IN ANY DOCUMENT REFERRED TO IN THIS COMMITMENT TO THE EXTENT THAT THE SPECIFIC COVENANT, CONDITION, RESTRICTION, OR LIMITATION VIOLATES STATE OR FEDERAL LAW BASED ON RACE, COLOR, RELIGION, SEX, SEXUAL ORIENTATION, GENDER IDENTITY, HANDICAP, FAMILIAL STATUS, OR NATIONAL ORIGIN.

The Policy will not insure against loss or damage resulting from the terms and provisions of any lease or easement identified in Schedule A, and will include the following Exceptions unless cleared to the satisfaction of the Company:

1. Any defect, lien, encumbrance, adverse claim, or other matter that appears for the first time in the Public Records or is created, attaches, or is disclosed between the Commitment Date and the date on which all of the Schedule B, Part I-Requirements are met.

2. Rights or claims of parties in possession not shown by the public records.

3. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the title that would be disclosed by an accurate and complete land survey of the land.

4. Easements, or claims of easements, not shown by the public records.

5. Taxes or special assessments which are not shown as existing liens by the public records.

6. Any lien, or right to a lien, for services, labor, or material heretofore or hereafter furnished, imposed by law and not shown by the public records.

7. Taxes for the year 2018 and subsequent years.

   P.I.N. Number:  11-35-232-002
   Property Code:  215A 036 (2017 $1,367.32)
        Exemption None
        Lot Dimensions 55 x 99
        Township Rockford

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by First American Title Insurance Co.. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; and Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

Copyright 2006-2016 American Land Title Association. All rights reserved.
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



AMERICAN
LAND TITLE
ASSOCIATION

Commitment No. WW259736AT

**EXHIBIT A**

Lot Two (2) in Block Six (6) as designated upon the Plat L. M. Noling's Subdivision of part of the Northeast Quarter (1/4) of Section 35, Township 44 North, Range 1 East of the Third Principal Meridian, the Plat of which Subdivision is recorded in Book 3 of Plats on page 18 in the Recorder's Office of Winnebago County, Illinois; situated in the County of Winnebago and State of Illinois.

Effective Date: 5/1/2008

Fidelity National Financial, Inc.
**Privacy Statement**

Fidelity National Financial, Inc. and its subsidiaries ("FNF") respect the privacy and security of your non-public personal information ("Personal Information") and protecting your Personal Information is one of our top priorities. This Privacy Statement explains FNF's privacy practices, including how we use the Personal Information we receive from you and from other specified sources, and to whom it may be disclosed. FNF follows the privacy practices described in this Privacy Statement and, depending on the business performed, FNF companies may share information as described herein.

**Personal Information Collected**
We may collect Personal Information about you from the following sources:
- Information we receive from you on applications or other forms, such as your name, address, social security number, tax identification number, asset information, and income information;
- Information we receive from you through our Internet websites, such as your name, address, email address, Internet Protocol address, the website links you used to get to our websites, and your activity while using or reviewing our websites;
- Information about your transactions with or services performed by us, our affiliates, or others, such as information concerning your policy, premiums, payment history, information about your home or other real property, information from lenders and other third parties involved in such transaction, account balances, and credit card information; and
- Information we receive from consumer or other reporting agencies and publicly recorded documents.

**Disclosure of Personal Information**
We may provide your Personal Information (excluding information we receive from consumer or other credit reporting agencies) to various individuals and companies, as permitted by law, without obtaining your prior authorization. Such laws do not allow consumers to restrict these disclosures.
Disclosures may include, without limitation, the following:
- To insurance agents, brokers, representatives, support organizations, or others to provide you with services you have requested, and to enable us to detect or prevent criminal activity, fraud, material misrepresentation, or nondisclosure in connection with an insurance transaction;
- To third-party contractors or service providers for the purpose of determining your eligibility for an insurance benefit or payment and/or providing you with services you have requested;
- To an insurance regulatory authority, or law enforcement or other governmental authority, in a civil action, in connection with a subpoena or a governmental investigation;
- To companies that perform marketing services on our behalf or to other financial institutions with which we have joint marketing agreements and/or
- To lenders, lien holders, judgement creditors, or other parties claiming an encumbrance or an interest in title whose claim or interest must be determined, settled, paid or released prior to a title or escrow closing.

We may also disclose your Personal Information to others when we believe, in good faith, that such disclosure is reasonably necessary to comply with the law or to protect the safety of our customers, employees, or property and/or to comply with a judicial proceeding, court order or legal process.

Disclosure to Affiliated Companies
We are permitted by law to share your name, address and facts about your transaction with other FNF companies, such as insurance companies, agents, and other real estate service providers to provide you with services you have requested, for marketing or product development research, or to market products or services to you. We do not, however, disclose information we collect from consumer credit reporting agencies with our affiliates or others without your consent, in conformity with applicable law, unless such disclosure is otherwise permitted by law.

<u>Disclosure to Nonaffiliated Third Parties</u>
We do not disclose Personal Information about our customers or former customers to nonaffiliated third
parties, except as outlined herein or as otherwise permitted by law.

**Confidentiality and Security of Personal Information**
We restrict access to Personal Information about you to those employees who need to know that information
to provide products or services to you.  We maintain physical, electronic, and procedural safeguards that
comply with federal regulations to guard Personal Information.

**Access to Personal Information/**
**Requests for Correction, Amendment, or Deletion of Personal Information**
As required by applicable law, we will afford you the right to access your Personal Information, under certain
circumstances to find out whom your Personal Information has been disclosed, and request correction or
deletion of your Personal Information.
<u>However, FNF's current policy is to maintain customers' Personal Information for no less than your state's
required record retention requirements for the purpose of handling future coverage claims.</u>

For your protection, <u>all requests made under this section must be in writing and must include your notarized
signature to establish your identity.</u>

Where permitted by law, we may charge a reasonable fee to cover the costs incurred in responding to such
requests.  Please send requests to:

Chief Privacy Officer
Fidelity National Financial, Inc.
601 Riverside Avenue
Jacksonville, FL 32204

**Changes to this Privacy Statement**
This Privacy Statement may be amended from time to time consistent with applicable privacy laws.  When we
amend this Privacy Statement, we will post a notice of such changes on our website.  The effective date of
this Privacy Statement, as stated above, indicates the last time this Privacy Statement was revised or
materially changed.





**Remit Payment To:**

Alliance Title LLC, of Rockfor
124 North Water Street, Suite 202
Rockford, Il 61107

**Billed To:**
Keller Williams Realty Si
Attn:   Bridget Holm
4201 Galleria Drive
Loves Park, IL 61111

**Invoice Date:** June 28, 2018
**Please Pay Before:** August 28, 2018
**Our File Number:** WW259736AT

**Property:**
1706 South 6th Street
Rockford, IL 61104
Winnebago

**Brief Legal:** L.M. Noling's Subdivision Lot 2,
Block 6 11-35-232-002

Borrower(s):
Jason Williams and Shanda Goodman

Seller(s):
Todd Fendler and Marla Fendler

| Description | Seller's Charges | Borrower's Charges |
|---|---|---|
| Policy premium for Owner's | 349.00 | |
| Copy Fee | 37.50 | |
| Search Fee | 150.00 | |
| Closing Protection Letter Seller | 50.00 | |
| IL DFI Policy Fee | 3.00 | |
| Closing Fee (Seller) | 147.50 | |
| Closing Fee (Buyer) | | 147.50 |
| Closing Protection Letter Borrower | | 25.00 |
| **TOTALS** | **$737.00** | **$172.50** |

**WHEN NECESSARY, THESE FEES APPLY **
**Recording Fees ($45.00 Deed, $56.00 15 Page MTG)**
**Wire($25 each), Courier($25 each), Email Fee($40)**

(WW259736AT.PFD/WW259736AT/5)

{blou}



20171006903
Filed for Record in
WINNEBAGO COUNTY, IL
NANCY MCPHERSON, RECORDER
03/08/2017   04:14:55PM
JUDGMENT                    36.00

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
WINNEBAGO COUNTY

QBE HOLDINGS, INC.,
            Judgment Creditor,

     v.

NORTHERN ILLINOIS UNDERWRITING MANAGERS, INC.;

NORTHERN ILLINOIS INSURANCE AGENCY, INC.,        Case Number: 17 L 68
d/b/a Northern Underwriting Managers, Inc.
a/k/a Northern Insurance Group Companies, Inc.
a/k/a Northern Illinois Insurance Billing Services
a/k/a Northern Risk Management Services

       and

TODD FENDLER,

          Judgment Debtors.

## JUDGMENT LIEN

PLEASE TAKE NOTICE that QBE Holdings, Inc. ("QBE"), as Judgment Creditor,

records its foreign judgment in the amount of $199,702.11 with the Winnebago County Recorder

of Deeds.  This foreign judgment was entered in the Circuit Court of Dane County Wisconsin on

January 12, 2017 in favor of QBE and against Northern Illinois Underwriting Managers, Inc.,

{blou}

Northern Illinois Insurance Agency, Inc., d/b/a Northern Underwriting Managers, Inc., a/k/a

Northern Insurance Group Companies, Inc., a/k/a Northern Illinois Insurance Billing Services,

a/k/a Northern Risk Management Services, and Todd Fendler ("Judgment Debtors"), and the

foreign judgment was registered in the Circuit Court of Winnebago County Illinois on February

28, 2017.

The legal description and PIN for the properties of each Judgment Debtor is as follows:

**TODD J. FENDER**
The Property Commonly Known as 1231 National Avenue, Rockford, Illinois 61103
Property Code: 11-14-484-003

Legal Description:

A part of Lot Sixteen (16), all of Lot Seventeen (17) and a part of Lot Eighteen (18) in Block Thirty-Two (32) as designated upon the Plat of Riverside Addition, City of Rockford, the Plat of which Addition is recorded in Book 4 of Plats on page 5 in the Recorder's Office of Winnebago County, Illinois; situated in the County of Winnebago and State of Illinois, all bounded and described as follows, to wit: Beginning at a point on the Southerly line of National Avenue, as designated upon said Plat, Two and One Half (2-1/2) feet Northeasterly from the point of intersection of the Northeasterly line of Lot Seventeen with the said Southeasterly line of said National Avenue; thence Southwesterly along the Southeasterly line of National Avenue, Eighty-two and One Half (82-1/2) feet to a point Twenty (20) feet Northeasterly from the point of the intersection of the Southwesterly line of said Lot Eighteen (18) with the Southeasterly line of National Avenue; thence Southeasterly, parallel with and distant Twenty (20) feet Northeasterly from the Southwesterly line of said Lot Eighteen (18) to the Northwesterly bank of Rock River; thence upstream along the Northwesterly bank of Rock River to a point that is Two and One Half (2-1/2) feet Northeasterly of and measured at right angles to the Southwesterly line of said Lot Sixteen (16); thence Northwesterly, parallel with and distant Two and One Half (2-1/2) feet Northeasterly from the Southwesterly line of said Lot Sixteen (16) to the place of beginning, situated in the City of Rockford, in the County of Winnebago and the State of Illinois.

**NORTHERN ILLINOIS UNDERWRITING MANAGERS, INC.,**

**NORTHERN ILLINOIS INSURANCE AGENCY, INC.,**
d/b/a Northern Underwriting Managers, Inc.,
a/k/a Northern Insurance Group Companies, Inc.,
a/k/a Northern Illinois Insurance Billing Services,
a/k/a Northern Risk Management Services.
The Property Commonly Known as 6090 Strathmoor Drive Unit #3, Rockford, Illinois 61107

2

{blou}

✓ Property Code: 12-22-311-003

Legal Description:

*( 37-2)*

Unit No. 3 in Mulford Moraine Office Condominium as delineated on a survey of the following described real estate: Lots Twelve (12) and Thirteen (13) as designated upon the Plat of Mulford Village Office Park Subdivision in part of the West Half (1/2) of the Southwest Quarter (1/4) of Section 22, Township 44 North, Range 2 East of the Third Principal Meridian, the Plat of which is recorded in Book 36 of Plats on page 122 in the Recorder's Office of Winnebago County, Illinois, which survey is attached as Exhibit C to the Declaration of Condominium recorded on Microfilm 8101-0825 as document no. 1539114 in the Recorder's Office of Winnebago County, Illinois, together with its undivided percentage interest in the common elements; situated in the County of Winnebago and State of Illinois.

Dated this 2 day of March, 2017

GODFREY & KAHN, S.C.

By: *Grace Kim*
Grace E. Kim ARDC # 6306202

Godfrey & Kahn, S.C.
One East Main Street, Suite 500
P.O. Box 2719
Madison, WI 53701-2719
Phone: (608) 257-3911

Attorney for Judgment Creditor
QBE Holdings, Inc.

RETURN TO

3

dotloop signature verification.

1    JOINT APPROVED FORM, WINNEBAGO COUNTY BAR ASSOCIATION "WCBA"
2    AND ROCKFORD AREA ASSOCIATION OF REALTORS® "RAAR"
3    **CONTRACT FOR PURCHASE AND SALE**
4    **For Use with Existing Single Family Residences**
5    **(Complete All Blanks and Delete Inapplicable Language)**
6
7    LISTING OFFICE: Keller Williams Realty Signature        Phone: 815-315-1111
8    Listing Broker: Bridget Holm                           Broker #: 110187
9    Listing Office Address: 4201 Galleria Dr. Loves Park, IL 61111
10   Listing Office License #: 478.010804 ___ Listing Broker License #: 475.114835
11   Email: BridgetHolm@KW.com ___ Phone: 815-289-1846 ___ Fax: ___
12   Seller's Attorney: ___ Phone: ___
13   Email: ___ Fax: ___
14   Condo/HOA Name: ___ Phone: ___
15   Condo/HOA Contact Name: ___ Email: ___
16
17   SELLING OFFICE: Keller Williams Realty Signature        Phone: 815-315-1111
18   Selling Broker: Bridget Holm                            Broker #: 110187
19   Selling Office Address: 4201 Galleria Dr. Loves Park, IL 61111
20   Selling Office License #: 478.010804 ___ Selling Broker License #: 475.114835
21   Email: BridgetHolm@KW.com ___ Phone: 815-289-1846 ___ Fax: ___
22   Buyer's Attorney: ___ Phone: ___
23   Email: ___ Fax: ___
24   Lender Name: ___ Contact Name: ___
25   Email: ___ Phone: ___ Fax: ___
26
27   Designated agents of the Listing Broker are agents of the Seller.  Designated agents of the
28   Selling Broker are agents of the Buyer unless a dual agency agreement is signed.
29   **CONFIRMATION OF CONSENT TO DUAL AGENCY**
30   The undersigned confirm that they have previously consented to ___,
31   Licensee, acting as a Dual Agent in providing brokerage services on their behalf and specifically
32   consent to Licensee acting as a Dual Agent in regard to the transaction referred to in this
33   document.    Seller's Initials: ___ / ___       Buyer's Initials: ___ / ___
34
35   1. Seller. To: (SELLER) Marla Fendler
36      Email: ___ Phone: ___
37      of ___ (Address & Zip Code)
38   2. Buyer. The Undersigned (BUYER) Jason Williams and Shanda Goodman
39      Email: ___ Phone: ___
40      of ___ (Address & Zip Code)
41   3. Premises. Offers to purchase the following described real estate situated in (Winnebago)
42      (___) County, Illinois, commonly known as: 1706 6th Street, Rockford, IL 61104
43      ___ Property I.D.#: 1135232002
44   and legally described as: L M NOLINGS SUB PT NE 1/4 SEC 35-44-1 LOT 002 BLOCK 006
45

SF                          Rev. 10/2015      **EXHIBIT**        Page 1 of 8
                                                  B

dotloop signature verification



46  4. Purchase Price. And to pay you $ 32,000.00

47     with $ 1,000.00 as earnest money (a minimum of 5% of the purchase price

48     is recommended) to be tendered by Buyer no later than one business day following the date

49     of the accepted Contract (which earnest money shall be increased to a total of

50     $ within one business day following the expiration of the Attorney

51     Approval period as set forth in Paragraph 6 herein) to be applied to the purchase price; (if

52     Contract is not subject to 5B financing contingency, Buyer will furnish written verification of

53     funds to close from a financial institution within _____ business days of acceptance of this

54     Contract).

55  5. Contingencies. Buyer's obligations pursuant to this Contract are contingent upon the

56     following:

57     A. Inspection. Buyer's inspection by a (licensed) home inspector, which may include, but

58     shall not be limited to, radon, mold, pest, mechanical, or structural inspections, at Buyer's

59     expense. Seller shall arrange for all utilities to be on at the time of inspection. The home

60     inspection shall cover only major components of the real estate, including but not limited to,

61     heating and cooling systems, plumbing and well system, electrical system, roof, walls,

62     windows, ceilings, floors, appliances and foundation. If Buyer notifies Seller within seven

63     (7) business days of the final acceptance of this Contract that the results of the inspection are

64     unacceptable to Buyer, this Contract shall be void. If Buyer does not notify Seller by said

65     date that the results of the inspection are unacceptable to Buyer, this provision shall be

66     deemed waived and this Contract shall remain in effect.

67     B. Financing. Obtain by _____, a written (Conventional) (FHA) (VA)

68     (_____) mortgage loan commitment containing the following terms: loan amount not

69     less than 0 % of the purchase price due in not less than === years with (Fixed)

70     (Adjustable) interest at not more than 0 % per year and lender required flood insurance

71     premiums not to exceed $ 0 per year, or containing other terms acceptable to Buyer.

72     Buyer shall provide to Seller by the above date a copy of the Lender's loan commitment or

73     upon Seller's request will provide a denial letter if available from Buyer's lender. The

74     issuance of a commitment containing the above-specified terms or Buyer's written

75     acceptance of a commitment containing other terms shall satisfy this contingency. Seller

76     agrees to pay Buyer's closing costs not exceeding $ ======= (to include all costs paid to

77     third parties in connection with the closing, prepaid mortgage interest, insurance and tax

78     reserve deposits). Seller shall pay costs of any required FHA or VA re-inspections but shall

79     not be required to pay for repair expenses in excess of $ _____. Where applicable, the

80     parties agree to promptly execute and direct their brokers to execute the applicable FHA

81     Amendatory Clause and Real Estate Certification or the VA Amendment to Sales Contract

82     forms currently approved by HUD.

83     C. Appraisal. Obtain by ====================, an appraisal prepared by an Illinois

84     licensed appraiser indicating the value of the premises to be equal to or greater than the

85     purchase price.

86     D. Sale of Property. (Enter into a contract for the sale of property for not less than

87     $ =========== or a lesser amount as is accepted by ============ and) complete the sale

88     of property in which Buyer now has an interest located at _____

89     _____ on or before ============. Seller reserves the right to

90     accept another bona fide offer subject to the rights of Buyer under this Contract. In the event

91     Seller accepts another bona fide offer, Seller shall deliver a notice to eliminate contingency

dotloop signature verification.

92    to Buyer.  Within 72 hours of receipt of such notice, Buyer shall deliver written notice to
93    Seller of removal of this contingency and **all** other Buyer contingencies AND (a) provide a
94    written commitment for a non-contingent bridge loan, OR (b) provide evidence of available
95    funds sufficient to allow Buyer to complete the transaction, or this Contract shall be void.
96  6.  Attorney's Approval.  This Contract is subject to Buyer's and Seller's attorney's written
97    disapproval of this Contract within seven (7) business days of the final acceptance of this
98    Contract.  In the absence of notice within the time specified, this provision shall be deemed
99    waived and this Contract shall remain in effect.
100  7.  Failure of Contingency.  Except as otherwise provided, if any contingency cannot in good
101    faith be carried out, this Contract shall become void and the earnest money shall be returned
102    to Buyer pursuant to the provisions of Paragraphs 10 and 16 hereof.
103  8.  Closing.  This transaction shall be closed on __July 13, 2018__ or on such date as mutually
104    agreed by the parties in writing, and Seller shall deliver possession of the premises in broom-
105    clean condition and free of debris, both interior and exterior, **at time of closing**.  If by no
106    fault of either party this transaction cannot close by the closing date due to any government
107    regulations or lender requirement, the date of closing shall be extended for the period
108    necessary to satisfy these requirements, not to exceed 7 business days.  The premises shall be
109    vacant at closing, unless it is (check if applicable):
110    ____ Subject to tenant's lease terms submitted in writing by Seller within seven (7) business
111       days after the date of this Contract, which terms shall be deemed accepted unless Buyer
112       provides written disapproval within seven (7) business days of Seller's delivery; or
113    ____ Subject to Occupancy Rider.
114    A final inspection of the real estate, fixtures, and personal property may be made by Buyer
115    within 48 hours prior to closing to determine whether the premises is in the same condition as
116    of the time Buyer entered into the Contract.
117  9.  Prorations and Credits.  Rents, utilities, pre-paid service contracts, property taxes, association
118    dues, and other similar items shall be prorated and credited along with security deposits and
119    prepaid items through date of closing.  Seller shall pay all special assessments,
120    special service area taxes, or fees or other similar items charged against the premises
121    approved, enacted or confirmed prior to date of final acceptance of contract by a public body,
122    private association or a Court.
123    Tax prorations shall be final as of closing and based upon the actual tax bill if known for a
124    specific tax year; otherwise shall be calculated at 105% of the most recent tax rate times the
125    assessment and exemption information published on the county assessor's website within 7
126    business days of final acceptance unless Seller submits to Buyer within 7 business days of
127    final acceptance evidence of changes in the assessment and exemption information.  Seller
128    warrants that it has submitted or will submit in a timely manner all necessary documentation
129    to preserve the exemptions through closing and shall provide evidence of the same within 7
130    business days of final acceptance; otherwise, the tax prorations shall be prorated without said
131    exemptions.
132    (Seller represents that as of final acceptance, (Condo) (Homeowner) Association fees are
133    $ _____ per _____ and that a special assessment (of $ _____ )
134    (check one) ___ has not / ___ has been levied).

dotloop signature verification:

135   10. <u>Earnest Money</u>.  The earnest money shall be held by <u>Keller Williams Realty Signature</u>,
136      referred to as "Escrowee," for the mutual benefit of the parties in a non-interest bearing
137      account.  If an earnest money dispute arises, Escrowee shall be authorized to release the
138      earnest money ONLY upon written direction executed by all parties or order of Court;
139      **provided, however, in the event the premises is being sold through a RAAR listing and**
140      **a dispute solely involving earnest money arises, the parties agree to submit the dispute**
141      **to binding arbitration if available through RAAR under arbitration rules and**
142      **procedures approved by RAAR and WCBA.**
143   11. <u>Personal Property</u>.  Seller warrants that Seller owns and agrees to transfer to Buyer, all
144      heating, plumbing, electrical systems and fixtures; water heater; existing storms and screens;
145      attached and built-in cabinets and shelves; attached carpet; attached mirrors; all planted
146      vegetation; and the following:
147      (Check or enumerate applicable items)
148      ☑ Ceiling Fan(s) ☑ Stove/Range/Oven___ Sump Pump(s)   ___ Window Treatments
149      ☑ Refrigerator   ___ Water Softener   ___ Outdoor Shed(s)   ___ Garage Dr. Opener
150      ___ Dishwasher   ___ Security System   ___ Satellite System   ___ Remote Control(s)
151      ___ Microwave   ___ Disposal   ___ Outdoor Playsets   ___ Water filtration system
152      ___ Washer   ___ Dryer   ___ Central Air   ___ Fpl screen(s) door(s)
153      ☑ Keys   ___ Window Air Unit(s)   ___ Grate(s)/Gas log(s)
154      Other items included: _____
155
156      Other items excluded: _____
157
158      Seller warrants there are no rented fixtures or equipment except: _____
159      _____.
160   12. <u>Seller Warranty</u>.  Seller agrees to deliver possession of the premises and personal property in
161      the same condition as it is at the date of this Contract, ordinary wear and tear excepted.
162      Buyer acknowledges that Buyer has inspected the premises and personal property and is
163      acquainted with its condition, and accepts the same in "AS IS" condition as of the time Buyer
164      executed this Contract, except Seller warrants the heating (and air conditioning) equipment
165      and systems, water heater, (water softener), plumbing and electrical equipment and systems,
166      kitchen appliances, and where applicable (septic system), (well), (swimming pool and
167      equipment), and (sprinkling system), to be in normal operating condition as of possession
168      transfer.  A system shall be deemed to be in normal operating condition if it performs the
169      function for which it is intended regardless of age and does not constitute a threat to health or
170      safety.  Unless written notice of breach of warranty is delivered by Buyer to Seller prior to
171      possession transfer, this warranty will be conclusively deemed to have been satisfied;
172      provided, however, that Buyer shall have six (6) months after possession transfer to provide
173      written notice to Seller of any defect existing as of possession transfer in the heating (and air
174      conditioning) equipment and systems, (septic system), (swimming pool and equipment), or
175      (sprinkling system) if said equipment could not be tested by Buyer or Buyer's licensed home
176      inspector at the time of any inspection conducted in conjunction with this Contract.
177      If deleted pursuant to Paragraph 22B As Is: Seller's Initials [___]  Buyer's Initials [_][_]

dotloop signature verification

178   13. <u>Water System Evaluations</u>. Seller shall provide to Buyer by <u>07/06/2018</u> at Seller's expense
179       (check if applicable):
180        _____ An evaluation of the (well)/(septic) systems, where applicable, dated within 90 days of
181           closing including sampling of the well verifying that the water is bacteriologically safe,
182           that the nitrate level is within requirements approved by the State of Illinois, that the
183           well and septic systems meet with all applicable health department requirements and
184           are in normal operating condition without observable defects. The well and septic
185           evaluations shall be conducted by the local county health department or an Illinois
186           licensed environmental health practitioner in accordance with local health department
187           requirements. If Seller does not provide Buyer with satisfactory well and septic
188           evaluations by the above date, then this Contract shall be voidable at the option of
189           Buyer as Buyer's exclusive remedy.
190         ☑ A sanitary sewer connection Certificate of Compliance where required by local
191           ordinance. If Seller does not provide the Certificate of Compliance by the above date,
192           then this Contract shall be voidable at the option of Buyer as Buyer's exclusive remedy.
193        _____ Where applicable, a Cross Connection Certificate of Compliance relating to lawn and
194           building sprinkling systems dated within one year of the date of closing. If Seller does
195           not provide the Certificate of Compliance by the above date, then this Contract shall be
196           voidable at the option of Buyer as Buyer's exclusive remedy.



197   14. <u>Title Insurance</u>. Seller shall furnish current title insurance commitment in the amount of the
198       purchase price to Buyer prior to closing, and final policy thereafter, at Seller's expense, from
199       a title company with a closing office located in the county where the premises is located,
200       showing merchantable title subject only to the following permitted exceptions: a) all accrued
201       taxes, fees and special assessments credited to Buyer at closing; b) building setbacks, use and
202       occupancy restrictions, conditions and covenants of record; c) zoning laws and ordinances; d)
203       easements for the use of public utilities; e) roads and highways; f) existing leases and
204       tenancies approved by Buyer under Paragraph 8, if any. None of these exceptions shall be
205       considered permitted exceptions if they are violated by the existing improvements or present
206       use of the premises or if they materially restrict the reasonable use of the premises as a
207       residence. If Seller cannot deliver merchantable title to Buyer at closing subject only to
208       permitted exceptions, this Contract shall be voidable at Buyer's option and the earnest money
209       shall be returned to Buyer.
210   15. <u>Destruction of the Premises</u>. If prior to delivery of deed or agreement for deed the
211       improvements on the premises shall be destroyed or materially damaged by fire or other
212       casualty, Buyer shall have the option of declaring this Contract void and receiving a refund
213       of earnest money paid, or of accepting the premises as damaged or destroyed, together with
214       the proceeds of any insurance payable as a result of the destruction or damage, which
215       proceeds Seller agrees to assign to Buyer.
216   16. <u>Liquidated Damages</u>. SHOULD BUYER FAIL TO PERFORM THIS CONTRACT
217       PROMPTLY IN THE TIME AND MANNER SPECIFIED, THE EARNEST MONEY
218       SHALL BE FORFEITED BY BUYER AS LIQUIDATED DAMAGES SUBJECT TO THE
219       PROVISIONS OF PARAGRAPH 10, AS SELLER'S EXCLUSIVE REMEDY, AND THIS
220       CONTRACT SHALL BE VOID. IN ANY ACTION TO ENFORCE THE TERMS OF
221       THIS CONTRACT, THE PREVAILING PARTY SHALL BE ENTITLED TO
222       REASONABLE ATTORNEYS FEES AND COSTS.
223   17. <u>Time of the Essence</u>. Time is of the essence of the terms and conditions of this Contract.

224  18. <u>Closing Documents and Funds</u>.  At closing Seller shall convey merchantable title to the
225      premises, subject to permitted exceptions, to Buyer or whomever Buyer may direct by
226      stamped recordable warranty deed releasing homestead, or such other appropriate deed or
227      agreement for deed as required.  The title company closing fee shall be paid by a Buyer with
228      a mortgage and shall be divided equally between the parties if Buyer has no mortgage.  The
229      remainder of the purchase price or any further part of it then due shall be paid and all
230      documents required by the transaction shall be signed and delivered.
231  19. <u>Governmental Compliance</u>.  The parties agree to comply with the following federal or state
232      acts when applicable:
233      A.  Illinois Real Estate Transfer Tax Act with Seller to pay all transfer taxes due at closing;
234      B.  Federal Real Estate Settlement Procedures Act (RESPA);
235      C.  The Illinois Smoke Detector Act with Seller to provide all required smoke detectors in
236          operating condition;
237      D.  The Carbon Monoxide Alarm Detector Act with Seller to provide required detectors in
238          operating condition;
239      E.  Illinois Residential Real Property Disclosure Act;
240      F.  Illinois Radon Awareness Act;
241      G.  Lead-Based Paint Hazard Reduction Act; and
242      H.  Illinois Good Funds Act.
243  20. <u>Notices</u>.  All required notices shall be in writing and shall be served directly upon any one of
244      the parties to whom the notice is directed, or the party's real estate brokers or attorneys, by
245      (a) personal delivery, (b) regular or express mail, (c) FAX machine, or (d) e-mail if an e-mail
246      address has been furnished by the recipient or is shown on this Contract.  Notices shall be
247      deemed satisfactorily delivered at the time of personal delivery, mailing, FAX, or e-mail
248      transmission regardless of the time of actual receipt by the other party, or their attorney, or
249      real estate broker, except that actual receipt by Buyer, Buyer's broker, or attorney of the
250      notice to eliminate contingency shall be required pursuant to Paragraph 5D of this Contract.
251      For purposes of execution of this Contract and providing subsequent notices, including
252      contingency removals, any electronically signed document or document transmitted by FAX
253      or e-mail shall be treated as an original document.  Business days are defined as Monday
254      through Friday excluding federal holidays.
255  21. <u>Entire Agreement</u>.  Following execution by the last party, this Contract shall be deemed
256      effective only upon delivery to the other party, as provided for notices in the preceding
257      paragraph. This document represents the entire agreement and shall be binding upon the
258      parties, their heirs, successors, and assigns.

dotloop signature verification.

| | | |
|---|---|---|
| 259 | | 22. **Optional Standard Clauses**. The following Optional Standard Clauses shall apply only if |
| 260 | | initialed by all parties: **(Identify applicable clauses and initial, complete, and make** |
| 261 | | **applicable deletions)** |
| 262 | | |
| 263 | | Seller's    Buyer's |
| 264 | | Initials    Initials |
| 265 | | |

266    ___/___  ___/___  A.  <u>Cancellation of Prior Contract</u>.  This Contract is subject to the cancellation
267                     of Seller's prior contract by _____.
268    ___/___  ___/___  B.  <u>As Is</u>.  Buyer accepts the premises in all respects (except well and septic
269                     systems) in "AS IS" condition as of date of Contract and waives the
270                     provisions of Paragraph 12 hereof.  **(Delete Paragraph 12 and initial**
271                     **deletion - does not affect Paragraph 13.)**
272    ___/___  ___/___  C.  <u>Home Warranty Plan</u>.  Seller shall provide to Buyer, at Seller's expense, a
273                     Home Warranty Plan, providing for basic and (_____)
274                     coverage for twelve months from date of closing as follows:
275
276                     _____    _____    _____
                         Company                Cost Not to Exceed          Service Fee
277    ___/___  ___/___  D.  <u>Repair Rider</u> is incorporated by reference.
278    ___/___  ___/___  E.  <u>Flood Certification</u>.  (For use with cash or Seller financed transactions
279                     only.)  This Contract is subject to Buyer obtaining within seven (7)
280                     business days of the acceptance of this Contract, a determination that the
281                     premises are not located in a FEMA designated special flood hazard ("A
282                     Zone") area or this Contract shall be void.
283    ___/___  ___/___  F.  <u>Survey Rider</u> is incorporated by reference.
284    ___/___  ___/___  G.  <u>Occupancy Rider</u> is incorporated by reference - Also see Paragraph 8.
285    ___/___  ___/___  H.  <u>Condo Rider</u> is incorporated by reference.
286    ___/___  ___/___  I.  <u>Short Sale Rider</u> is incorporated by reference.
287    ___/___  ___/___  J.  <u>Agreement for Deed Rider</u> is incorporated by reference.

dotloop signature verification

288 **NOTICE TO PARTIES**
289 **BY THE SIGNING OF THIS CONTRACT, YOU ARE ENTERING INTO A BINDING LEGAL**
290 **AGREEMENT. ANY REPRESENTATION UPON WHICH YOU RELY SHOULD BE**
291 **INCLUDED IN THIS AGREEMENT. NO ORAL REPRESENTATION WILL BE BINDING**
292 **UPON OR AN OBLIGATION OF THE SELLER, BUYER, OR REAL ESTATE BROKER. THE**
293 **UNDERSIGNED ACKNOWLEDGE THAT THEY HAVE HAD THE OPPORTUNITY TO**
294 **CONSULT WITH SEPARATE LEGAL COUNSEL PRIOR TO THE EXECUTION OF THIS**
295 **AGREEMENT.**
296
297 Dated: __06/20/2018_____ and to be accepted by: __06/22/2018_____

298 BUYER: _____   BUYER: _____

299 Buyer hereby acknowledges receipt of: A) Radon Disclosure _____(Buyer's Initials)

300 B) Residential Real Property Disclosure Report _____Buyer's Initials)

301 C) Lead-Based Paint Rider Required for Pre-1978 Residential Property _____Buyer's Initials)

302 Presented to Seller __06/20/2018_____ (date) Seller's Initials:____

303 Countered:_____ with counteroffer to be accepted by: _____

304 SELLER:_____   SELLER:_____

305 Date of Final Acceptance & Delivery:_____ **(Insert after all terms and conditions**

306 **have been agreed upon)**

307 Escrowee acknowledges receipt of the earnest money select one: ___ Cash ___ Check ___ Note

308 Amount: $_____

309 Escrowee Name: _____ Signature: _____